## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FLORENT BAYALA
5607 Kennedy Street
Riverdale, MD 20737

Plaintiff

v.                                             Civil Action No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Office of the General Counsel
20 Massachusetts Avenue, NW
Washington DC 20528

Defendant

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.  Plaintiff, a citizen of Burkina Faso, is seeking asylum here in the United States.  He fears torture and death if he deported.  He is scheduled for a hearing on his asylum application in March 2016, in Immigration Court, where defendant will attempt to deport him.

2. Defendant has documents in its possession which it may use in Immigration Court, against Plaintiff.   Defendant refuses to give the documents to Plaintiff.

1

3. Plaintiff requested the documents, via the Freedom of Information Act [FOIA]. Defendant refused to disclose the documents, via a cryptic, blunderbuss letter-decision which hides and obfuscates the real reasons for the refusal. *See* Exhibit 2, attached hereto. Defendant then invited plaintiff to file an administrative appeal to challenge that decision. Because the decision is vague and cryptic, plaintiff cannot make cogent and targeted arguments in such an appeal. An appeal under these circumstances is illusory and a waste of time. Plaintiff has "the right" "to appeal" any adverse determination, as per 5 U.S.C. § 552(a)(6)(A)(i). Defendant is thwarting this right of plaintiff.

4. Plaintiff is desirous of obtaining the documents because he wants to assist himself in Immigration Court and because he wants to assist other asylum applicants see justice.

5. Plaintiff's counsel is employed by Catholic Charities of Washington, which is part of the Archdiocese of Washington. The two documents requested in this lawsuit will be useful to Catholic Charities ["CC"] in its activities:

a. CC has represented asylum applicants for decades, and will continue to represent them for decades to come. CC wants all of its clients to see justice.

b. CC regularly conducts trainings and seminars for lawyers representing asylum applicants.

c. Lawyers at CC are members of other organizations, such as the American Immigration Lawyers Association [AILA] and the DC Bar Association, and are invited from time to time to speak at conferences on asylum. CC lawyers write articles for ILW.com, Bender's Immigration Bulletin, and AILA; they attend public meetings at local asylum offices and at Headquarters, where they advocate for justice.

d. CC wants to assist other lawyers, as they seek to obtain justice for their clients.

e. CC wants to monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice; are the officers doing their job properly? Are their training and internal quality control mechanisms sufficient? CC wants to assist Congress and the advocacy community in the implementation and improvement of the asylum system. CC wants to increase public awareness and to facilitate public oversight of the asylum system; CC wants to preserve the integrity of immigration court and asylum office proceedings.

6. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## Jurisdiction and Venue

7. This court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a) (4) (B), and 28 U.S.C. § 1331. This court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§2201-2202 and Federal Rules of Civil Procedure 57 and 65.

8. Venue in this district is proper under 5 U.S.C. § 552(a) (4) (B) and 28 U.S.C. § 1391(c) because defendant is located in the District of Columbia.

## The parties

9. Plaintiff Mr. Bayala is a citizen of Burkina Faso. He is scheduled for an Individual Hearing on March 15, 2016 at the Baltimore, MD Immigration Court, where he will seek asylum, pursuant to 8 U.S.C. § 1158.

He also is seeking withholding of removal, pursuant to 8 U.S. C. § 1231 (b)(3). Plaintiff's A number is #205-961-282.

10. Defendant DHS is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f). DHS is responsible for enforcing federal immigration laws. DHS has possession and control over the documents sought by plaintiff. DHS is

4

seeking to deport plaintiff from the United States and return him to the dictatorial regime holding power in Burkina Faso.

<u>The asylum process</u>

11. An alien fleeing persecution in his native country may apply for asylum here in the United States, pursuant to § 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158.

12. The alien is entitled to an interview before an asylum officer, who is employed by the DHS. At the interview, there is no court reporter and no recording device. The officer takes notes, often by hand.

13. After the interview, the officer writes an Assessment, which incorporates his notes, and which may add other information.

14. The website of defendant states that the applicant and his attorney "may submit a Freedom of Information Act [FOIA] request to obtain a copy of any assessment (and other information in the file)."

15. The Assessment to Refer and the Notes of the asylum officer are not given to the applicant; however, they are given to the DHS lawyer who represents the government in Immigration Court.

16. The asylum officer works in a division of the DHS known as "CIS," which stands for Citizenship and Immigration Services.

17. The DHS lawyer works in a division of the DHS known as "ICE," which stands for Immigration and Customs Enforcement.

18. At times, the DHS lawyer will use these documents in Immigration Court, to discredit the applicant. If the asylum officer relied on certain facts and information to deny asylum, there is a "high probability" the government lawyer would use the same material against the applicant in immigration court. *Kaur v. INS*, 237 F.3d 1098 (9th Cir. 2001).

19. On November 19, 2013, the DHS agreed, in writing, that it shall no longer resist the disclosure of notes on the grounds of the deliberative process privilege. *See* ECF document 42, in *Martins v. US-CIS,* Case No. 13-591 (N.D. Cal. 2013).

Procedural history

20. Plaintiff, a citizen of Burkina Faso, arrived in the United States on April 14, 2012. He applied for asylum and interviewed at the Arlington Asylum Office on October 7, 2013. Plaintiff speaks limited English; he used a French interpreter during the interview.

21. The asylum officer, who does not speak French, asked questions in English; the interpreter asked plaintiff in French; plaintiff answered in French; the interpreter then spoke in English to the officer, who took about 5 pages of notes. The officer took notes of what she understood the *interpreter* said that day. Plaintiff trusts his interpreter, and believes he speaks good English and

French, but plaintiff is not sure. Perhaps the interpreter mis- interpreted one or two key questions or answers. Plaintiff knows that "things get lost in translation."

22.  After the interview, the officer typed on her computer an Assessment, which is three pages long.

23. Today, the notes and Assessment are in the hands of the DHS lawyer who will appear in the Baltimore Immigration Court.

24.  On November 11, 2013 Plaintiff faxed a FOIA request of the notes and Assessment of the asylum officer.  Plaintiff also requested a copy of any material used by the officer, but not given to him by plaintiff.

25.  Defendant received the faxed FOIA request on November 11, 2013 at 22:05 o'clock. *See* Exhibit 1.

26.  Via a letter dated November 26, 2013 the defendant stated the request was received that same date: November 26th.  However, this was an error by defendant: the request was received on November 11th.

27.   Via a letter dated December 17, 2013, defendant stated it had identified 157 pages "that are responsive to your request." That letter, [Exhibit 2] states that four exemptions are "applicable."  The letter does not mention "notes" of the Asylum Officer; nor does it mention the Assessment of the

Asylum Officer. Attached to the letter was a disc, containing several pages. Defendant did not give the notes or the Assessment, to plaintiff.

The letter states that plaintiff may appeal to a FOIA appeals office, "within 60 days of the date of this letter."

28. The notes which were written by the asylum officer are now in the "A-file" and are in the possession of the DHS lawyer in Baltimore.

29.     The Assessment written by the asylum officer is now in the "A-file" and is in the possession of the DHS lawyer in Baltimore.

30. The DHS lawyer in Baltimore believes that he may use the notes and also the Assessment at the next Immigration Court hearing. It is unfair and incongruous in American jurisprudence for one party in litigation to have and use documents not possessed by the other party. It is unfair for a party to disclose documents in one forum, but refuse to disclose them in another forum.

<u>Exhaustion of administrative remedies</u>

31. Plaintiff has exhausted any and all administrative remedies with defendant.

<u>FIRST CAUSE OF ACTION</u>

32. Plaintiff repeats, alleges and incorporates the allegations of paragraphs 1-31 as if fully set forth herein.

33. DHS received a FOIA request, but did not, within 20 days thereof, a] make a "determination" of whether it would produce the documents; and b] give "the reasons" for that determination, in violation of 5 U.S.C. § 552(a)(6)(A)(i).

34. Exhibit 2, the letter dated December 17th, states that "we have referred 14 pages in their entirety to the State Department for their direct response to you." What was on those 14 pages? Did DHS send the notes to the State Department? Did DHS send the Assessment to the State Department? Should plaintiff appeal to the State Department? Exhibit 2 does not answer these questions. DHS has thus created confusion, and has thwarted plaintiff's right to appeal.

35. Exhibit 2, the letter dated December 17th, states that DHS "located a potentially responsive document(s) that may have originated from U.S. Immigration and Customs Enforcement (ICE)." DHS states it "sent the document(s)" to ICE. What does "documents(s)" mean? Did DHS send the notes to ICE? Did DHS send the Assessment to ICE? Should plaintiff appeal to ICE? Exhibit 2 does not answer these questions. DHS has thus created confusion, and has thwarted plaintiff's right to appeal.

36. Plaintiff requested the notes of the officer. DHS's letter dated December 17, 2013 sets forth a blunderbuss of possibilities. It states that

four different exemptions are "applicable." Each of these four has many

sub-divisions. Under § (b)(5), for example, the letter states that

"confidential communications between attorney and client" *may* be

involved. [emphasis added]. Are the notes exempt because of a

communication between attorney and client? Who is the attorney, who is

the client, what is the communication?

What does the word "may" mean?

If DHS really believes that the notes of the asylum officer are

"confidential communications between attorney and client," the DHS should

say so, expressly.

The December 17th letter does not answer these questions. Therefore,

plaintiff is unable to make a meaningful appeal.

36a. The December 17th letter says that under § (b)(6), the government

"may" withhold things such as drivers' licenses and social security numbers.

Are drivers' licenses and social security numbers mentioned inside the

notes?

The December 17th letter says that under § (b)(7)C), the government

"could" withhold telephone and fax numbers. Are such numbers mentioned

inside the notes? What does the word "could" mean?

The December 17th letter states that under § (b)(7)(E), the government "could" withhold checkpoint locations and surveillance techniques. Are such things mentioned inside the notes?

37. Plaintiff requested the Assessment of the asylum officer. The December 17th letter sets forth a blunderbuss of possibilities. Do all of the possibilities apply to the Assessment? Plaintiff is confused and cannot make a cogent and targeted appeal.

38. The December 17th letter does not distinguish between the notes and the Assessment. There is no difference between them? The DHS agreed in writing on November 19, 2013, that it shall no longer resist the disclosure of notes on the grounds of the deliberative process privilege. *See* ECF document 42, in *Martins v. US-CIS,* Case No. 13-591 (N.D. Cal. 2013). Does that agreement have no value? Is DHS taking one position in the Northern District of California and a different position here in Washington DC?

38a. The DHS has not stated "the reasons" for its failure to disclose the notes. The DHS has not stated "the reasons" for its failure to disclose the Assessment. Therefore, the DHS has not enabled plaintiff to make a meaningful administrative appeal.

SECOND CAUSE OF ACTION

39. Plaintiff repeats, alleges and incorporates the allegations of paragraphs 1-38b as if fully set forth herein.

40. The DHS has not provided the reasonably segregated portions of the records requested, as required by § 552(b). The DHS has not provided plaintiff with "the reasons" why nothing is segregable. The DHS has not provided plaintiff with any facts or anything useful to plaintiff, so that plaintiff may make cogent and targeted arguments in an appeal. The DHS has not enabled plaintiff to make a meaningful appeal.

41. The DHS provided not even one word of the notes. Surely, in the notes of the officer, the word "the" is to be found. Surely, the phrase, "the applicant stated" is to be found. There must be some parts of the notes which are segregable. Plaintiff believes there are paragraphs of facts which are easily segregable.

42. The DHS provided not even one word of the Assessment. Surely, in the Assessment of the officer, the word "the" is to be found. Surely, the phrase, "the applicant stated" is to be found. There must be some parts of the Assessment which are segregable. Plaintiff believes there are paragraphs of facts which are easily segregable.

43. The DHS does not provide any reasons or facts for its conclusion

that nothing is segregable. Thus, plaintiff is unable to make a meaningful

appeal.

WHEREFORE, plaintiff requests that judgment be entered in his
favor against defendant and that the court:

a) Order defendant to re-write its December 17th letter, and describe what
documents were sent to the State Department, and describe what documents
were sent to ICE;
b) Order defendant to re-write its December 17th letter and give the real
reasons, and facts, why the notes are exempt, and why nothing is segregable,
so that plaintiff may make a meaningful administrative appeal;
c) Order defendant to re-write its December 17th letter and give the real
reasons, and facts, why the Assessment is exempt, and why nothing is
segregable, so that plaintiff may make a meaningful administrative appeal;
d) Declare that defendant's December 17th letter violates the FOIA;
e) Enjoin defendant from issuing such a letter in the future;
f) Award plaintiff reasonable attorney fees and costs pursuant to 5 U.S. C.
§552(a) (4) (E) and 28 U.S.C. § 2412; and
g) Grant all other such relief to plaintiff as the Court deems proper and
equitable.

Respectfully submitted,

Attorney for Plaintiff

David L. Cleveland
DC Bar # 424209
Catholic Charities of Washington
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com

13