**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| FLORENT BAYALA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0007 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 28, 36, 38, 42 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| HOMELAND SECURITY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS;**
**GRANTING PLAINTIFF'S MOTION TO STRIKE;**
**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM**

**I. INTRODUCTION**

Plaintiff, Mr. Florent Bayala, was unsatisfied with the Department of Homeland

Security's (DHS) response to his FOIA request. After he brought suit against the agency in this

Court, DHS supplemented its initial response by releasing additional documents and providing

much more detailed explanations of its continued withholdings. Rather than contest DHS's

updated rationale for its withholdings, Mr. Bayala seeks summary judgment compelling DHS to

"re-write" its initial response letter and enjoining DHS from providing similar initial response

letters to future requesters. DHS moves to dismiss these claims. This Court dismisses these

claims for relief, but retains jurisdiction to determine the adequacy of DHS's search, the

propriety of DHS's continued withholdings, and whether DHS has properly released all

segregable material.

## II.  BACKGROUND

This Court and the D.C. Circuit have previously described the facts of this case. *See Bayala v. U.S. Dep't of Homeland Sec.* (*Bayala II*), 827 F.3d 31 (D.C. Cir. 2016), *rev'g Bayala v. U.S. Dep't of Homeland Sec.* (*Bayala I*), 72 F. Supp. 3d 260 (D.D.C. 2014). The Court recites only the facts relevant to the present motions, none of which are in dispute.

### A.  The FOIA Request

Plaintiff, Mr. Florent Bayala, applied for asylum in the United States. Compl. ¶ 1, ECF No. 1. As a part of the application process, an asylum hearing officer interviewed Mr. Bayala. Compl. ¶¶ 20–21. Mr. Bayala later submitted a FOIA request to DHS seeking various records related to the interview. In particular, he sought (1) "a copy of the notes written by the Asylum Officer," (2) "a copy of the Assessment to Refer of the Asylum Officer," and (3) "a copy of any material used by the Asylum Officer, but not given to him by [Mr. Bayala]." FOIA Request, ECF No. 1-1, Ex. 1.

DHS initially responded to the request on December 17, 2013 by releasing 119 pages in full, releasing 10 pages in part, and withholding 11 pages in full. Letter from Jill A. Eggleston (Initial DHS Letter), ECF No. 1-2, Ex. 2. DHS also referred some documents to the U.S. Immigration and Customs Enforcement FOIA office[1] and to the State Department[2] for response.

---

[1] U.S. Immigration and Customs Enforcement later provided a declaration indicating that it had released the 3 pages referred to it in part—subject to withholdings under FOIA Exemptions 6, 7(C), and 7(E) and Privacy Act Exemption (k)(2). Pavlik-Keenan Decl. ¶ 8, ECF No. 14-2, Ex. D. Although Mr. Bayala challenges DHS's initial response letter, including the portion describing this referral, Pl.'s 2d MSJ at 24–35, ECF No. 28, the materials themselves and their handling by U.S. Immigration and Customs Enforcement do not appear to be at issue in this case.

[2] The State Department later provided a declaration indicating that, of the fourteen pages referred to it, it had released two documents in part and withheld two documents in their entirety under FOIA Exemption 3. Hackett Decl. ¶¶ 4–5, ECF No. 14-2, Ex. C. Although Mr. Bayala challenges DHS's initial response letter, including the portion describing this referral, Pl.'s 2d

Initial DHS Letter. The Assessment to Refer was withheld in full. Eggleston Decl. ¶¶ 16–20, ECF No. 14-2, Ex. A. Mr. Bayala also contends—and DHS does not dispute—that DHS did not release any records responsive to the request for materials used by the asylum officer but not given to him by Mr. Bayala. *See* Pl.'s Statement Mat. Facts Not in Genuine Dispute ¶ 6, ECF No. 28-2 ("The [identified pages] did not include what Mr. Bayala *did* request."); Pl.'s Mot. Summ. J. (Pl.'s 2d MSJ) at 8, ECF No. 28.

The initial response letter referred to FOIA Exemptions 5, 6, 7(C), and 7(E) in generic terms, but did not explain why the exemptions were applied to the particular records at issue in Mr. Bayala's request or which exemptions had been applied to withhold which portions of the responsive records. *See* Initial DHS Letter. The letter also stated that DHS had "determined that [the withheld records] contain no reasonably segregable portion(s)" without further describing DHS's process for determining segregability. Initial DHS Letter.

## B.  Procedural History

Dissatisfied with this response, Mr. Bayala filed suit in this Court without first appealing DHS's decision administratively. Mr. Bayala's complaint focused on the alleged deficiencies of DHS's initial response and argued that the initial response letter was so vague and unhelpful that he was "unable to make a meaningful [administrative] appeal." Compl. ¶ 36; *see generally* Compl. ¶¶ 34–38a. Mr. Bayala sought, *inter alia*, an order forcing DHS to "re-write" the letter to justify its withholdings in more detail and an injunction preventing DHS from "issuing such a letter in the future." Compl. at 13.

---

MSJ at 24–25, the materials themselves and their handling by the State Department do not appear to be at issue in this case.

After Mr. Bayala filed his complaint, DHS voluntarily released the asylum officer's notes and several other documents that were previously withheld.[3] Letter from Kenneth Adebonojo, (Mar. 24, 2014), ECF No. 14-2, Ex. B. DHS explained that it continued to withhold the Assessment to Refer in full under the deliberative process privilege, and that no portion of the Assessment to Refer was segregable. Eggleston Decl. ¶¶ 16–20, ECF No. 14-2, Ex. A. DHS also provided expanded explanations for the FOIA exemptions it claimed to justify withholding portions of other records. Eggleston Decl. ¶¶ 21–26.

Mr. Bayala's response did not engage with DHS's new, more detailed explanations for its withholdings and explicitly refrained from seeking the release of the Assessment to Refer. *See, e.g.*, Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. (Pl.'s 1st Opp'n) at 6, ECF No. 16 ("Mr. Bayala is not now seeking the release of documents: he is challenging the administrative appeal process employed by the DHS. He complains that the DHS has not given him enough information for him to make a real administrative appeal."); Pl.'s 1st Opp'n at 24 ("The Court should remand the case back to DHS, for it to conduct a real administrative appeal."). *But see* Compl. ¶ 4 ("Plaintiff is desirous of obtaining the documents . . . .").

This Court granted DHS's motion to dismiss on the grounds that Mr. Bayala had not exhausted his administrative remedies before proceeding to court. *See generally*, *Bayala I*, 72 F. Supp. 3d 260. On appeal, the D.C. Circuit reversed because Mr. Bayala had only failed to exhaust DHS's "*original* and now-displaced withholding decision." *Bayala II*, 827 F.3d at 32. The D.C. Circuit concluded that "once [DHS] chose to abandon its previous determination, make a *sua sponte* disclosure of documents, and craft a new, five-page-long explanation for this

_____

[3] According to Mr. Bayala, and undisputed by DHS, these additional releases did not include any records relevant to the request for material used by the asylum officer but not provided by Mr. Bayala. Pl.'s 2d MSJ at 8.

different withholding decision in the district court, . . . [t]hat new FOIA determination rendered the propriety of the original agency decision—and any administrative challenges to it—an entirely academic question." *Id.* at 35.

Instead, the D.C. Circuit reframed the issue as whether DHS's new position was correct and whether Mr. Bayala is entitled to the Assessment to Refer.[4] *Id.* at 34–35. The D.C. Circuit also explicitly clarified that Mr. Bayala need not administratively exhaust DHS's most recent position on its withholdings. *Id.* at 35–36 (holding that "FOIA's text provides only for administratively exhausting an 'adverse determination' made by the agency within its statutorily required administrative process" and therefore Bayala cannot be "compelled to administratively exhaust this new agency decision because that decision was the byproduct of litigation, not of the pre-litigation administrative decision-making process to which FOIA's exhaustion requirement textually applies"). Rather, the D.C. Circuit apparently contemplated that Mr. Bayala would— free of the administrative exhaustion requirement—press his request for the Assessment to Refer or other withheld documents before this Court on remand. *Bayala II*, 827 F.3d at 34–35 ("[T]he propriety of [DHS's] withholding determination has not yet been adjudicated and is very much contested, so this FOIA case is not moot. . . . [T]he dispute between the parties center[s] on the correctness of [DHS's] materially novel and different in-court disclosure decision.").

On remand, Mr. Bayala has moved for summary judgment on essentially the same claims for a "re-write" and injunction that constituted his initial complaint.[5] *See generally* Pl.'s 2d MSJ, ECF No. 28. DHS has moved to dismiss. *See generally* Def.'s Mot. Dismiss & Opp'n Pl.'s 2d

---

[4] The D.C. Circuit apparently concluded that Mr. Bayala still sought the Assessment to Refer based on a colloquy with Mr. Bayala's counsel at oral argument. *Bayala II*, 827 F.3d at 35.

[5] Mr. Bayala also filed a Motion to Strike the document docketed at ECF No. 37, which Mr. Bayala filed in error. *See generally* Pl.'s Mot. Strike, ECF No. 38. Because DHS did not oppose this motion, the motion to strike will be granted.

Mot. Summ. J. (Def.'s 2d MTD), ECF No. 35.[6] Mr. Bayala also sought leave to file a

supplemental memorandum, which this Court grants.[7] *See generally* Pl.'s Mot. Leave File Suppl.

Mem., ECF No. 42. All motions are now ripe for decision by this Court.

## III. ANALYSIS

Rather than engage with DHS's most recent explanations for its withholdings, Mr. Bayala

rehashes his complaint and again seeks (1) that DHS "re-write" its initial letter (ostensibly so Mr.

Bayala can pursue an administrative appeal), and (2) injunctive relief reforming DHS's FOIA

policies. Mr. Bayala's request for a "re-write" is barred by the mandate rule and seeks a form of

relief not available under FOIA. Additionally, Mr. Bayala lacks standing to pursue his request

for injunctive relief.[8]

---

[6] DHS's motion to dismiss (ECF No. 36) referred entirely to the documents filed at ECF
No. 35. For clarity, this opinion cites to ECF No. 35.

[7] A court has the discretion to grant leave to file an additional brief, known as a surreply.
*See Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011). A surreply may be appropriate, *inter
alia*, when the "proposed surreply would be helpful to the resolution of the pending motion" and
the other party would not be "unduly prejudiced." *Glass v. Lahood*, 786 F. Supp. 2d 189, 231
(D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011). DHS does not
argue that it would be prejudiced by permitting Mr. Bayala to file a surreply. *See generally*
Def.'s Mem. Opp'n Pl.'s Mot. Leave to File Suppl. Mem., ECF No. 43.
   The Court has considered Mr. Bayala's proposed surreply in its analysis. The surreply
includes three general types of material. First, argument that duplicates the content of Mr.
Bayala's prior briefing. Second, argument and factual material applicable to a challenge of
DHS's overall FOIA policies—which this Court does not reach, as discussed *infra* in Part III.B.
Third, argument regarding the segregability of portions of the Assessment to Refer. As discussed
*infra* at Part III.C, the Court does not address segregability at this juncture.

[8] Mr. Bayala further argues that courts should prevent agencies from "belatedly
assert[ing] new [FOIA] exemptions" to the district court, "absent any showing of good cause."
Pl.'s 2d MSJ at 21–23, ECF No. 28. Mr. Bayala provides no authority for this proposition, and
indeed acknowledges the weight of authority permitting an agency to supplement its
administrative arguments in district court. Pl.'s 2d MSJ at 21 (citing *Gula v. Meese*, 699 F. Supp.
956, 959 n.2 (D.D.C. 1988)); *see also Bayala II*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("It is well-
settled that '[a]n agency [may] prevail on an exemption that it has . . . raised *either* at the agency
level *or* in the district court . . .'" (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779

### A.  Mr. Bayala May Not Seek a "Re-Write" of DHS's Initial Response Letter

Mr. Bayala requests that the Court order DHS to "re-write" its initial response letter more fulsomely. Pl.'s 2d MSJ at 37–38; *see also* Compl. at 13. According to Mr. Bayala, this relief will permit him to pursue a more meaningful administrative appeal of DHS's withholdings.[9] Pl.'s 2d MSJ at 27–31, 36–37; Pl.'s Reply at 8, 11, ECF No. 39. However, this relief is unavailable to Mr. Bayala for several reasons. First, this Court is bound by the mandate of the D.C. Circuit. Second, FOIA provides a remedy of *de novo* review of an agency's releases at district court, not a return to the agency's initial response or administrative process.

---

(D.C. Cir. 1978)). Instead, Mr. Bayala argues policy that, without such a restriction, agencies will "continue to be quick and sloppy" and "only spend ten seconds on a FOIA request, and send the requester a glib boilerplate letter." Pl.'s 2d MSJ at 21–24.

The Court declines Mr. Bayala's invitation to alter the existing law in this area, especially because "the [agency] cannot be faulted for failing to raise arguments during administrative proceedings when the Plaintiff elected to bypass administrative proceedings altogether." *Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 954 F. Supp. 2d 1, 11 (D.D.C. 2013). This case—in which *Mr. Bayala* elected not to pursue an initial administrative appeal—would make a poor test case for an agency's ability to assert new exemptions at the district court level. Furthermore, because "[a]gency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), the Court does not credit Mr. Bayala's suggestion that agencies will intentionally sandbag requesters by delaying an explanation of their reasons for withholdings.

[9] Mr. Bayala challenges only the content of the initial response letter, not DHS's updated explanation. Mr. Bayala objects to the initial response letter because (1) it did not provide the "reasons" for withholding portions of records as required by 5 U.S.C. § 552(a)(6)(A)(i); (2) it did not sufficiently explain why no portions were segregable; and (3) it did not adequately describe the documents it referred to other agencies. *See generally* Pl.'s 2d MSJ, ECF No. 25; *see also* Pl.'s 2d MSJ at 24–34. Mr. Bayala argues that the initial response letter was both overinclusive, in that it included exemptions the agency later abandoned; and underinclusive, in that it omitted exemptions the agency later claimed. Pl.'s 2d MSJ at 13–14. Mr. Bayala extensively discusses his interpretation of 5 U.S.C. § 552(a)(6)(A)(i), *see, e.g.*, Pl.'s 2d MSJ at 5–7, 13–15; Pl.'s Reply at 3–11, ECF No. 39, including by analogy to other areas of law, Pl.'s 2d MSJ at 16–21. Because the Court concludes, *infra*, that it may not reach Mr. Bayala's challenge to the initial response letter, it does not canvass these arguments in depth.

1.   The Mandate Rule Bars Further Review of DHS's Initial Response

This Court lacks the power to grant Mr. Bayala a "re-write" because to do so would exceed the scope of remand from the D.C. Circuit.

"Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596–97 (D.C. Cir. 2001) (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)). "The mandate rule is a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Id.* at 597 (citations omitted). For example, in *Role Models America, Inc.*, the D.C. Circuit remanded and instructed the district court to consider whether plaintiffs could be screened as "other interested parties" under a particular statute. *Role Models Am., Inc.,v. Geren*, 514 F.3d 1308, 1311 (D.C. Cir. 2008). When the case reached the D.C. Circuit again, the D.C. Circuit held that it was improper for the district court to rescreen the plaintiffs as "homeless providers" because the remand had provided only for screening of the plaintiffs as "other interested parties." *Id.*

Because it is an "application of the 'law of the case' doctrine," the mandate rule is "limited to issues that were decided either explicitly or by necessary implication [by the Court of Appeals]—'[t]he mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand.'" *U.S. ex rel. of Dep't of Labor v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997) (quoting *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983)). Courts may refer to the appellate opinion to determine what issues the mandate encompassed. *See id.* at 1043 n.7 ("As we have previously noted, it is entirely appropriate—and, in most cases in this circuit, necessary—to consult the opinion to interpret the mandate." (citing *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 347 n.25 (D.C. Cir. 1977))).

In this case, the D.C. Circuit's opinion has foreclosed this Court from reviewing DHS's administrative process. The D.C. Circuit framed the question before this Court as follows: "once the government abandoned its original FOIA decision, *the dispute between the parties centered on the correctness of [DHS's] materially novel and different in-court disclosure decision.*" *Bayala II*, 827 F.3d at 35 (emphasis added). Moreover, the D.C. Circuit had before it Mr. Bayala's claims that DHS's "'vague and cryptic' response to his FOIA request 'thwart[ed]' [his] right to appeal" and Mr. Bayala's request that the court "declare that [DHS's] response violated FOIA and order [DHS] to 'rewrite' its letter." *Id.* at 33 (quoting Mr. Bayala's briefing). Yet the D.C. Circuit concluded that "[t]he only live FOIA decision now under review is the one the Department chose to make for the first time in litigation, and for which there was no administrative avenue to exhaust." *Id.* at 32.

This Court cannot revisit the issues decided by the D.C. Circuit. The Court must thus decline Mr. Bayala's request for a "re-write," which falls outside the controversy identified by the D.C. Circuit.

2. <u>Mr. Bayala's Proposed Remedy Is Not Available Under FOIA</u>

Mr. Bayala is presently before this Court, and this Court stands ready to adjudicate *de novo* his dispute with DHS over the propriety of its withholdings. Because this Court's review is *de novo*, the previous administrative process and DHS's initial response letter are immaterial. Thus, even if the Court were not constrained by the mandate rule, it would conclude that Mr. Bayala is not entitled to additional review of DHS's initial response. Other courts in this jurisdiction have likewise concluded that FOIA requesters may not challenge prior administrative errors after finding themselves in district court. *See Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 34 (D.D.C. 2010) (rejecting a FOIA requester's argument that she was never

informed of her right to an administrative appeal because "[r]egardless of whatever administrative rights Plaintiff may have had, she has not been denied a right to be heard before the courts"); *Beck v. U.S. Dep't of Justice*, No. 88-3433, 1991 WL 519827, at *4 n.3 (D.D.C. Jan. 31, 1991) (rejecting a FOIA requester's contention that the agency's refusal to process his administrative appeal after a suit was pending in district court violated his due process rights because the plaintiff could not "show that he has been deprived of a process or a forum in which his case can be heard"), *aff'd*, No. 91-5292, 1992 WL 360498 (D.C. Cir. Nov. 19, 1992), *and aff'd*, 997 F.2d 1489 (D.C. Cir. 1993). This Court is aware of no case in which a FOIA requester has sought and received a "do-over" administrative proceeding in lieu of the *de novo* review provided by FOIA.

Similarly, it is well established in precedent and in FOIA's text that if the agency completely fails to respond to a FOIA request, the requester proceeds directly into district court. *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (citing 5 U.S.C. § 552(a)(6)(c)). Identical reasons militate in favor of the same remedy (*de novo* review in district court) when an agency imperfectly completes its administrative process. In fact, requesters—like Mr. Bayala—may be *benefitted* by leapfrogging over an administrative appeal and proceeding directly into district court. S*ee Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 280–81 (D.D.C. 2012) (noting that "the refusal of the [agency] to provide administrative appeals in these circumstances could be viewed as a boon to FOIA requesters because it expedites a requester's ability to seek judicial review").

This conclusion that, once *de novo* review is available, further review of prior administrative proceedings is inappropriate is also supported by the remedies available to employees seeking redress under Title VII. Such plaintiffs first proceed administratively before

the EEOC or MSPB, and may then seek *de novo* review in federal district court. 42 U.S.C.

§ 2000e-16; 5 U.S.C. § 7703. But, that *de novo* review is the exclusive remedy—such plaintiffs

may not also seek a "do-over" of the administrative proceeding or challenge the administrative

process. *See Wright v. Dominguez*, No. 04-5055, 2004 WL 1636961, at *1 (D.C. Cir. July 21,

2004) (holding that neither Title VII, nor the APA, nor the due process clause created a cause of

action against the EEOC for improperly handling an administrative claim because the plaintiff

had the right to a *de novo* review in district court); *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir.

1997) (rejecting a suit against the EEOC because "Congress intended the private right of action .

. . against [the] employer—to serve as the remedy for any improper handling of a discrimination

charge by the EEOC"); *Coulibaly v. Kerry*, No. 14-0189, 2016 WL 5674821, at *32 (D.D.C.

Sept. 30, 2016) ("Instead of a right to sue the processing agencies . . . Title VII and other

governing statutes provide an adequate remedy for [plaintiff's] allegations of wrongdoing: *de*

*novo* review in federal court."); *Harrigan v. Yang*, 168 F. Supp. 3d 25, 35–36 (D.D.C. 2016)

("Because of the availability of [*de novo* review in district court], 'parties suffer no harm if the

EEOC conducts an imperfect investigation or inquiry, and consequently have no need to sue the

agency for negligence or malfeasance in the processing of claims.'" (quoting *Bagenstose v.*

*District of Columbia*, 503 F. Supp. 2d 247, 256 (D.D.C. 2007))); *Mackey v. Sullivan*, No. 90-

0007, 1991 WL 128510, at *3 (D.D.C. Mar. 28, 1991) ("This remedy [of *de novo* review at

district court] explicitly provided by Congress strongly implies that Congress did not intend that

charging parties be able to force the EEOC, by means of suit or the threat thereof, to more fully

or speedily investigate or attempt to conciliate their charge."); *cf. Great Am. Fed. Sav. & Loan*

*Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) ("§ 717 of Title VII provides the exclusive remedy

for employment discrimination claims of those federal employees that it covers."). These same

factors are present here—*de novo* review of DHS's withholdings by this Court renders

unnecessary a re-examination of DHS's initial response letter.

For these reasons, the remedy of *de novo* review provided for by FOIA and currently

available to Mr. Bayala renders immaterial the alleged imperfections of DHS's initial response

and the administrative process.[10]

### B.  Mr. Bayala Lacks Standing to Seek Prospective Relief

Next, the Court addresses Mr. Bayala's claim for injunctive relief[11] requiring DHS to

alter its overall FOIA response procedures. As a threshold matter, the Court considers if Mr.

Bayala has Article III standing to raise these challenges, and concludes that he does not.

---

[10] The availability of *de novo* review in district court also strips Mr. Bayala of standing to press his request that DHS "re-write" the initial letter and provide him an administrative appeal because he lacks a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citation omitted). Mr. Bayala's alleged inability to take a "meaningful" administrative appeal is not a legally cognizable injury because Mr. Bayala is now able to assert any challenges to DHS's withholding before this Court. Given that this Court's review of an administrative appeal—had there been one—is *de novo*, Mr. Bayala is no worse off than he would have been had he pursued an administrative appeal. *Cf. Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 285 (D.D.C. 2012) (rejecting FOIA requesters' argument that procedures "rob[bed]" them of their "ability to intelligently appeal any decisions at the administrative level," in part because Congress provided requesters "the opportunity for *de novo* judicial review of all withholding decisions—an ample and powerful procedural mechanism" instead); *see also* Order at 3, *Anguimate v. U.S. Dep't of Homeland Sec.*, No. 12-0791 (D.D.C. Mar. 26, 2013) (holding that FOIA requester did not have standing to challenge an allegedly deficient initial response letter after the agency further justified its withholdings because the alleged injury was "procedural," but the requester had failed to show "not only that the defendant's acts omitted some procedural requirement, but also that it [was] substantially probable that the procedural breach [would] cause [an] essential injury to the plaintiff's own interest." (quoting *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996) (en banc))); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 42 (D.D.C. 2012) (holding that FOIA requesters lacked the injury in fact requirement of standing to challenge the agency's dismissal of their administrative appeals when the agency no longer relied on its initially asserted FOIA exemptions).

[11] To the extent that Mr. Bayala's filings could be construed to also seek declaratory relief indicating that DHS's policies are flawed, that relief fails for the same reasons as Mr. Bayala's request for injunctive relief.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (first quoting U.S. Const., Art. III, § 2, then quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Article III standing requires a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61 (internal quotation marks and citation omitted). Furthermore, it is the "general rule that a party 'must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties.'" *Hinck v. United States*, 550 U.S. 501, 510 n.3 (2007) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)). Here, Mr. Bayala identifies no injury—concrete or vague, imminent or distant—that *he* will suffer if DHS is not enjoined. Mr. Bayala does not claim that he has any pending FOIA requests other than the one at issue here, or that he has any plans to submit additional requests in the future. The Court thus has no basis in the record to conclude that *Mr. Bayala* will be injured if DHS continues its allegedly improper practices.

Indeed, the thrust of Mr. Bayala's briefing reveals his reliance on the impact of DHS's policies on other, potential future requesters not before this court. *See, e.g.*, Pl.'s 2d MSJ at 4, ECF No. 28 ("Mr. Bayala is concerned that an agency might respond by saying: 'We withhold everything because of exemptions 1–9.' . . . The vast majority of FOIA requests never go to district court. This Court should be aware of those requesters, as it considers this case."); Pl.'s 2d MSJ at 35–36 (describing seventeen letters from DHS to different FOIA requesters); Compl. ¶ 4 ("Plaintiff . . . wants to assist other asylum applicants see justice." [sic]). Considering harm to

other, future, hypothetical FOIA requesters, however, is precisely what this Court cannot do.[12]

Where plaintiffs do not allege any possibility that their injury could recur—such as through

pending FOIA requests or concrete plans to file additional requests—they lack standing for

prospective relief regarding an agency's FOIA practices. *See, e.g.*, *Citizens for Responsibility &*

*Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 106 (D.D.C. 2007) (a

group's stated future plans to file additional FOIA requests were "too speculative and remote at

[that] point to give [the plaintiffs] standing to seek prospective relief").

Mr. Bayala therefore has not demonstrated that he has standing to seek an injunction

requiring DHS to alter its FOIA procedures.[13] *See Friends of the Earth, Inc. v. Laidlaw Envtl.*

---

[12] To the extent that Mr. Bayala intends his reference to DHS's alleged "boilerplate" responses to other FOIA requesters to cast doubt on the quality of DHS's assertions here, this argument is more appropriately directed toward the substantive review of DHS's withholdings, and not a request for prospective relief.

[13] The Court notes that, although this claim for injunctive relief fails, mechanisms exist through which an appropriate plaintiff could receive the type of relief sought by Mr. Bayala here. An appropriate plaintiff must assert that it has a continuing interest in submitting future FOIA requests and thus will be harmed if the agency continues to violate FOIA. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 262 (D.D.C. 2012) (a group with fifteen pending FOIA requests had standing to pursue various challenges to the CIA's FOIA procedures); *Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012) (a group with pending FOIA requests had standing to challenge agency's record-keeping procedures). Plaintiffs in these cases are often groups or companies in the business of frequently filing FOIA requests. *See generally, e.g.*, *Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) (plaintiff-corporation frequently filed FOIA requests in order to obtain information about government contracts and provide it to prospective contractors); *Citizens for Responsibility & Ethics in Wash.*, 858 F. Supp. 2d 51 (plaintiff organization was a non-profit that frequently filed FOIA requests for research, litigation, and advocacy).

Some courts within this jurisdiction have referred to such general procedural challenges as "policy or practice" suits. *Cf.* Pl.'s 2d MSJ at 15 ("This policy and practice violates the FOIA."). For a plaintiff in such a policy or practice suit to establish standing, the plaintiff must show that "(1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA; and (2) *the plaintiff will suffer continuing injury due to this practice.*" *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 252–53 (citing *Payne Enters.*, 837 F.2d at 491 (quotation marks omitted) (emphasis added). *Cf. City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) ("[I]f a plaintiff's specific claim has been mooted, [the plaintiff] may nevertheless seek declaratory relief

*Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("A plaintiff must demonstrate standing separately

for each form of relief sought." (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))). Because

Mr. Bayala lacks standing to pursue his claim for prospective relief,[14] this Court lacks the

jurisdiction to consider it.

### C.  The Court Declines to Dismiss This Case

Although DHS moves to dismiss this case, the Court declines to do so and instead seeks

to reach the issue contemplated by the D.C. Circuit—"the correctness of [DHS's] materially

novel and different in-court disclosure decision." *Bayala II*, 827 F.3d at 35. Determining if

DHS's position is correct will touch upon at least three issues—the adequacy of DHS's search,

the propriety of DHS's withholdings, and whether DHS has properly released all segregable

material.[15]

---

forbidding an agency from imposing a disputed policy in the future, *so long as the plaintiff has standing to bring such a forward-looking challenge . . . .*" (emphasis added)).

[14] The Court is also barred from granting Mr. Bayala the prospective relief he seeks because granting such an injunction would not redress any of Mr. Bayala's injuries. Redressability is another requirement of Article III standing. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) ("In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision."); *see also Florida Audubon Soc. v. Bentsen*, 94 F.3d at 663–64 (D.C. Cir. 1996) ("[The] [re]dressability requirement for federal standing examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff . . . ."). Here, as discussed *supra*, Mr. Bayala has no particularized injury, and because he has not asserted that he intends to submit any future FOIA requests, certainly not one that would be redressed by injunctive relief.

[15] DHS argues that Mr. Bayala has conceded several of these issues. Def.'s Reply at 4, ECF No. 41. However, there are several reasons the Court cannot yet decide if DHS is entitled to summary judgment. First, DHS has not styled its present motion as a motion for summary judgment. Setting aside that cosmetic issue, to prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). DHS's current briefing does not even argue that it has performed an adequate search or appropriately withheld portions of records, and it has thus failed to show "that there is no

Of these, Mr. Bayala's briefing address only whether DHS has released all segregable material.[16] Pl.'s 2d MSJ at 31–36. The Court notes that three other judges of this circuit have expressed concern that Assessments to Refer may contain segregable portions. *See* Pl.'s 2d MSJ at 9–10 (citing *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46 (D.D.C. 2016), *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232 (D.D.C. 2015), and *Abtew v. U.S. Dep't of Homeland Sec.*, 47 F. Supp. 3d 98 (D.D.C. 2014), *aff'd*, 808 F.3d 895 (D.C. Cir. 2015)).

However, the briefing before the court does not discuss the adequacy of DHS's search or the withholdings claimed by DHS.[17] It would therefore be premature for this Court to determine whether the Assessment to Refer contained segregable portions before determining if DHS was correct to withhold any portions of the document. The Court will thus postpone a determination on segregability. Instead, the Court will review the Assessment to Refer *in camera*, and

---

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

The Court further notes that, under the D.C. Circuit's recent jurisprudence, it may not grant a motion for summary judgment for the reason that it was conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. 'The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.' The District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3))).

[16] To the extent that Mr. Bayala's arguments about segregability focus on the initial response letter, his claims are not justiciable. *See supra* Part III.A. However, given that DHS continues to assert that the Assessment to Refer contains no segregable portions, Eggleston Decl. ¶ 20, ECF No. 14-2, Ex. A, Mr. Bayala's arguments may be interpreted as a challenge to DHS's most recent position and the Court views them in that light.

[17] In fact, Mr. Bayala's most recent briefing expressly avoids asking for the release of the Assessment to Refer. *See* Pl.'s 2d MSJ at 3 ("Mr. Bayala seeks a court order for the DHS to re-issue its initial response in compliances [sic] with the statutory mandates."); Pl.'s 2d MSJ at 12 ("The Court should order the agency to re-write its December 2013 letter. The agency should advise Mr. Bayala of his right to an administrative appeal. Perhaps he will appeal; perhaps the administrative appeal will be fruitless; perhaps he will file another complaint. Or, perhaps not.").

simultaneously entertain supplemental briefing from the parties with regards to the adequacy of

DHS's search, the propriety of its withholdings, and whether it has properly released all segregable

material.[18] The parties are directed to focus their attention solely on the *de novo* review of the

record created before this Court—available in the record as exhibits to DHS's prior motion for

summary judgment, *see generally* Def.'s Mot. Summ. J., ECF No. 14 & exhibits—and abandon

any further argument directed at the administrative record or the initial response letter.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 28) is

**DENIED**, Defendant's Motion to Dismiss (ECF No. 36) is **GRANTED IN PART** and

**DENIED IN PART**, Plaintiff's Motion to Strike (ECF No. 38) is **GRANTED**, and Plaintiff's

Motion to File Supplemental Memorandum (ECF No. 42) is **GRANTED**. An order consistent

with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 30, 2017                                         RUDOLPH CONTRERAS
                                                               United States District Judge

---

[18] To the extent that it seeks a determination on whether DHS has properly released all segregable material, DHS's motion to dismiss is denied. It does not appear to this Court that DHS seeks summary judgment on the adequacy of DHS's search or the propriety of DHS's withholdings. *See* Def.'s 2d MTD at 16, ECF No. 35 ("Plaintiff's 're-write' claim should be dismissed and summary judgment on the segregability issue should be denied."). To the extent that DHS seeks the dismissal of the entire case, it is denied because DHS has not yet shown that "that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).