# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FLORENT BAYALA,                           :
                                          :
    Plaintiff,        :          Civil Action No.:    14-0007 (RC)
                                          :
    v.                :          Re Document No.:    50
                                          :
UNITED STATES DEPARTMENT OF               :
HOMELAND SECURITY,                        :
                                          :
    Defendant.        :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT;
### GRANTING PLAINTIFF PARTIAL SUMMARY JUDGMENT *SUA SPONTE*

## I.  INTRODUCTION

Plaintiff, Mr. Florent Bayala, requested records related to his asylum application from the

Department of Homeland Security (DHS). After a lengthy procedural history, DHS now renews

its motion for summary judgment, arguing that it performed an adequate search and released all

records to which Mr. Bayala was entitled. Although the Court finds that DHS's search was

adequate and that FOIA Exemption 5 applies to portions of the Assessment to Refer, based on its

*in camera* review it also orders DHS to release the first eight paragraphs of the Assessment to

Refer to Mr. Bayala.

## II.  BACKGROUND

This case has an extensive procedural history, much of which is irrelevant to the instant

motion. Mr. Bayala initially brought suit in this Court because he was dissatisfied with DHS's

response to his FOIA request. This Court and the D.C. Circuit have previously discussed whether

administrative exhaustion barred Mr. Bayala's claims, and whether Mr. Bayala could seek a "re-write" of DHS's response letter. *See generally Bayala v. U.S. Dep't of Homeland Sec.* (*Bayala I*), 72 F. Supp. 3d 260 (D.D.C. 2014), *rev'd by Bayala v. U.S. Dep't of Homeland Sec.* (*Bayala II*), 827 F.3d 31 (D.C. Cir. 2016); *see also generally Bayala v. U.S. Dep't of Homeland Sec.* (*Bayala III*), --- F. Supp. 3d ---, 2017 WL 1194161 (D.D.C. Mar. 30, 2017). This Court has now rejected Mr. Bayala's requests for a "re-write" of the response letter or injunctive relief. *See generally Bayala III*, 2017 WL 1194161. However, this Court retained jurisdiction to adjudicate the substantive FOIA dispute between the parties, and therefore ordered DHS to submit the Assessment to Refer for *in camera* review while this Court "simultaneously entertain[ed] supplemental briefing from the parties with regards to the adequacy of DHS's search, the propriety of its withholdings, and whether it has properly released all segregable material." *Id.* at *8.

DHS has now provided the Assessment to Refer for this Court's *in camera* review, *cf.* Assessment to Refer, ECF No. 50-8, Ex. F, and renewed its motion for summary judgment on the grounds that its search was adequate and it released all records required by FOIA, Mem. P. & A. Supp. Def.'s Renewed Mot. Summ. J. (Def.'s 2d MSJ), ECF No. 50. Mr. Bayala opposed DHS's motion, Bayala's Mem. P. & A. Opp'n DHS's Mot. Summ. J. (Pl.'s Opp'n), ECF No. 52, and DHS replied, Def.'s Reply Pl.'s Opp'n Def.'s Renewed Mot. Summ. J. (Def.'s Reply), ECF No. 54, and the matter is thus ripe for decision by this Court.

The Court therefore briefly summarizes the facts surrounding Mr. Bayala's FOIA request and DHS's response. As part of Mr. Bayala's application for asylum in the United States, he was interviewed by an asylum officer. Compl. ¶¶ 1, 20–21, ECF No. 1. Subsequently, Mr. Bayala submitted a FOIA request to DHS seeking (1) "a copy of the notes written by the Asylum

Officer," (2) "a copy of the Assessment to Refer[1] of the Asylum Officer," and (3) "a copy of any material used by the Asylum Officer, but not given to him by [Mr. Bayala]." FOIA Request, ECF No. 1-1, Ex. 1.

DHS determined that "the documents responsive to the Plaintiff's request would be located in the Plaintiff's A-file [or alien file]." 2d Eggleston Decl. ¶ 2, ECF No. 50-4, Ex. B. Therefore, DHS "located an A-file bearing the Plaintiff's name and A-number" by searching its record system. 2d Eggleston Decl. ¶ 2. Because "DHS/USCIS does not store asylum seeker's records in any other files or set of files," DHS concluded that the A-file would contain "[a]ll documents responsive to the Plaintiff's FOIA request." 2d Eggleston Decl. ¶ 2; *see also generally* Eggleston Decl. ¶¶ 9–10, ECF No. 50-3, Ex. A.[2] DHS initially responded to the request on December 17, 2013 by releasing 119 pages in full, releasing 10 pages in part, and withholding 11 pages in full.[3] Letter from Jill A. Eggleston to David L. Cleveland (Dec. 17, 2013) (Initial DHS Letter), ECF No. 50-3, Ex. A. Att. 3.[4] During the course of litigation in this matter, DHS

---

[1] "An Assessment to Refer is a short document prepared by a Department official after interviewing an asylum applicant. The Assessment summarizes the asylum interview and assesses the applicant's credibility and consistency. It also recommends whether to grant asylum. The Department official who wrote the Assessment to Refer then forwards it to a supervisor, who in turn decides whether to grant asylum." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015).

[2] The Eggleston declaration also appears in the record at ECF No. 14-2, Ex. A.

[3] DHS also referred some documents to the U.S. Immigration and Customs and State Department FOIA offices for their direct response to Mr. Bayala. Initial DHS Letter. It appears that both agencies subsequently released some documents to Mr. Bayala, but Mr. Bayala does not appear to bring claims concerning either of these releases. *See generally* Pavlik-Keenan Decl. ¶ 8, ECF No. 50-7, Ex. E; Hackett Decl. ¶¶ 4–5, ECF No. 50-6, Ex. D.

[4] This letter also appears in the record at ECF No. 1-2, Ex. 2.

released additional documents including the asylum officer's notes. Letter from Kenneth Adebonojo to David L. Cleveland (Mar. 24, 2014), ECF No. 50-5, Ex. C.[5]

The Assessment to Refer was withheld in full under the deliberative process privilege. Eggleston Decl. ¶¶ 16–20, ECF No. 14-2, Ex. A. DHS asserted that no portion of the Assessment to Refer was segregable. Eggleston Decl. ¶¶ 16–20, ECF No. 14-2, Ex. A. In addition to the Assessment to Refer, DHS withheld several other documents in full or in part. Pursuant to FOIA Exemption 6, DHS withheld the "home address of an interpreter," Eggleston Decl. ¶ 21; a "copy of an interpreter's driver's license," Eggleston Decl. ¶ 22; and portions of a "TECS II I-94 Arrival Departure Display" that "identif[ied] the individual that prepared the document," Eggleston Decl. ¶ 26. Pursuant to FOIA Exemption 7(E), DHS withheld parts of an "Asylum and NACARA § 2032 Background Identity and Security Checklist" concerning "the use of electronic database systems, communications and instructions for Agency personnel related to possible interactions with applicants, and information gathering techniques," Eggleston Decl. ¶ 23; parts of an "IBIS Inquiry" "concern[ing] the use of electronic database systems, communications and instructions for Agency personnel related to possible interactions with applicants, and information gathering techniques," Eggleston Decl. ¶ 24; and parts of an "Immigration and Naturalization Service FD28 Tracking System" concerning "the use of electronic database systems, communications and instructions for Agency personnel related to possible interactions with applicants, and information gathering techniques," Eggleston Decl. ¶ 25.

It is undisputed that DHS did not release any records responsive to the request for materials used by the asylum officer but not given to him by Mr. Bayala. *See* Pl.'s Statement

---

[5] This letter also appears in the record at ECF No. 14-2, Ex. B.

Mat. Facts Not in Genuine Dispute ¶ 6, ECF No. 28-2 ("The [identified pages] did not include what Mr. Bayala *did* request."); Pl.'s Mot. Summ. J. at 8, ECF No. 28.

### III. LEGAL STANDARD

"[T]o prevail in a Freedom of Information Act suit, 'the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements.'" *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). At the summary judgment stage, the agency must do so by showing that "that there is no genuine dispute as to any material fact and the [agency] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Weisberg*, 627 F.2d at 367. A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *Scott v. Harris*, 550 U.S. 372, 380 (2007). When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B) (2012); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009).

If responsive records are located, the agency must either disclose them or justify its withholding through one of the FOIA's nine exclusive statutory exemptions. *See* 5 U.S.C. § 552(b); *see also Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) ("[A]gencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions."). It is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845. "The [C]ourt . . . 'impose[s] a substantial burden on an agency seeking to avoid disclosure' through

the FOIA exemptions." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (alteration in original) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). Accordingly, disclosure exemptions are "narrowly construed," and "'conclusory and generalized allegations of exemptions' are unacceptable." *Morley*, 508 F.3d at 1114–15 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)). However, "a reviewing court should 'respect the expertise of an agency' and not 'overstep the proper limits of the judicial role in FOIA review,'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)), and an agency's explanation is thus "sufficient if it appears 'logical' or 'plausible,'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

## IV. ANALYSIS

The Court first considers whether DHS's search for responsive records was adequate. Finding that it was, the Court determines whether DHS properly withheld the Assessment to Refer and other records.

### A. Adequacy of the Search

DHS asserts that it performed an adequate search for records, Def.'s 2d MSJ at 7–9, ECF No. 50, and the Court agrees. Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks and citation omitted). The agency need not to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. DOJ*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). In order to receive summary judgment, the agency must provide a "reasonably

detailed" affidavit describing the scope of its search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). Once the agency has provided such an affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence." *Morley*, 508 F.3d at 1116 (citation omitted).

Here, DHS "located an A-file bearing the Plaintiff's name and A-number." 2d Eggleston Decl. ¶ 2. DHS stores all of the records relating to an asylum applicant in the applicant's alien file, or A-file. 2d Eggleston Decl. ¶ 2, ECF No. 50-4. DHS's affidavit therefore is sufficient to establish that its search was reasonably calculated to identify all records responsive to Mr. Bayala's request. *Cf. Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009) ("There can be no question that the search terms used to locate plaintiff's A-File were adequate, because USCIS succeeded in locating the A-File; no other responsive documents are in the possession of USCIS.").

Although Mr. Bayala does not directly object to the adequacy of DHS's search, *see generally* Pl.'s Opp'n, ECF No. 52, Mr. Bayala appears to take issue with the DHS's failure to release any materials used by the asylum officer but not provided by Mr. Bayala, and the Court interprets this objection as relating to the adequacy of the search. One part of Mr. Bayala's FOIA request sought "a copy of any material used by the Asylum Officer, but not given to him by [Mr. Bayala]." FOIA Request, ECF No. 1-1, Ex. 1. Mr. Bayala believes that "[t]he [asylum] officer may have used materials not given to him by Mr. Bayala." Pl.'s Opp'n at 1. However, Mr. Bayala complains that "[t]he DHS has still not . . . released any records used by the asylum officer, but not given to him by Mr. Bayala." Pl.'s Opp'n at 1; *see also* Pl.'s Opp'n at 15–16. Because none of the withheld documents fall into this category, the Court interprets Mr. Bayala as arguing that DHS's search was inadequate because such records exist but DHS failed to locate them.

"In this circuit, it is clear that a plaintiff's unsubstantiated belief that missing records exist cannot demonstrate the inadequacy of an agency's search." *Parker v. U.S. Immigration & Customs Enf't*, 238 F. Supp. 3d 89, 102 (D.D.C. 2017); *see also Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 138 (D.D.C. 2011) (rejecting plaintiff's speculative argument "that the search was inadequate because certain documents they believe must have been created have not been produced" because plaintiff's position was "conjecture" and the agency provided sufficiently detailed affidavits describing its search). Here, Mr. Bayala has offered no evidence showing that records exist that were used by the asylum officer but not given to him by Mr. Bayala. Mr. Bayala's claims thus lack sufficient foundation to rebut DHS's affidavit, which explains that it has searched all of the locations where such records would reasonably be expected to be found. DHS's affidavits are sufficiently detailed to "enjoy a presumption of good faith [sufficient to] withstand purely speculative claims about the existence and discoverability of other documents," and the Court therefore credits the most likely inference that DHS possesses no records used by the asylum officer but not given to him by Mr. Bayala. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citing *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978)). The Court therefore will grant DHS summary judgment as to the adequacy of its search.

## B. Propriety of the Withholdings

DHS withheld the Assessment to Refer in full pursuant to FOIA Exemption 5. DHS also withheld several other records either in full or in part under FOIA Exemptions 6 and 7(E).

1. Assessment to Refer

DHS claims that it may withhold the Assessment to Refer in full under the deliberative process privilege contained in FOIA Exemption 5. Eggleston Decl. ¶ 16. The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The purpose of the exemption is to protect the decisionmaking process within the agency. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). In order to withhold information pursuant to the privilege, an agency must demonstrate that the information is both (1) predecisional, or "generated before the adoption of an agency policy," and also (2) deliberative, or "reflect[ing] the give-and-take of the consultative process." *Id.*

DHS describes the Assessment to Refer as a "document prepared by the USCIS asylum officer that interviewed the Plaintiff, for his supervisor." Eggleston Decl. ¶ 18. DHS further states that the Assessment to Refer is "pre-decisional because it predates USCIS's decision not to grant asylum to the Plaintiff" and that it "forms the basis for the decision to not grant Plaintiff asylum and instead refers his case to an immigration judge for removal proceedings." Eggleston Decl. ¶ 18. According to DHS, the Assessment to Refer "is an essential part of the USCIS deliberative process that leads to the ultimate determination to deny an alien's application for asylum." Eggleston Decl. ¶ 18. DHS also notes that "[i]t is in the interests of USCIS to protect the manner in which asylum officers . . . prioritize then analyze information gleaned from asylum applicants during interviews." Eggleston Decl. ¶ 19.

The Court finds that the Assessment to Refer is, at least in part, exempt under the deliberative process privilege contained in Exemption 5. As DHS argues, the Assessment to Refer is predecisional because it was written before a final determination was made on Mr. Bayala's application for asylum, and is deliberative because it provided the opinions of the asylum officer to his supervisor. This conclusion accords with recent cases in which the D.C. Circuit and other courts of this jurisdiction found that the deliberative process privilege applied to Assessments to Refer. *See Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015) ("[T]he Assessment to Refer was both pre-decisional and deliberative. The Assessment was pre-decisional; it was merely a recommendation to a supervisor. The supervisor, not the official writing the Assessment, made the final decision. The Assessment was also deliberative; it was written as part of the process by which the supervisor came to that final decision. The Assessment itself had no 'operative effect.'" (internal citation omitted)); *see also Abramyan v. U.S. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 65 (D.D.C. 2013) ("Assessments of credibility and recommendations are 'quintessential deliberative information.'" (quoting *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013))).

Rather than dispute the Assessment to Refer's predecisional or deliberative nature, Mr. Bayala argues that the Assessment to Refer should not be withheld because the asylum officer who drafted it had "no expectation of privacy" because other Assessments to Refer have appeared in the public record in other cases, apparently under the evidence rules applicable in immigration court. Pl.'s Opp'n at 4–5; *cf.* Def.'s Reply at 7, ECF No. 54. However, Mr. Bayala's argument incorrectly states the law. Although an agency may waive the deliberative process privilege as to *a particular document* by releasing it to the public, an agency does not waive the privilege as to an entire class of documents by voluntarily releasing one document of that type.

*Compare Coastal States*, 617 F.2d at 866 ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it . . . is used by the agency in its dealings with the public."), *with Abtew*, 808 F.3d at 900 ("[A]n agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." (citing *Army Times Publ'g Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993))). Indeed, the D.C. Circuit in *Abtew* specifically rejected Mr. Bayala's argument here and held that an Assessment to Refer could still be withheld despite the release of other Assessments to refer in other litigation.[6] *Abtew*, 808 F.3d at 900.

Mr. Bayala further argues, in a single paragraph, that "DHS does not explain the possible harm that might result if parts of the Bayala assessment are released." Pl.'s Opp'n at 5, ECF No. 52. First, the Court notes that DHS addresses the potential harm in the initial Eggleston declaration, its renewed motion for summary judgment, and in its reply. *See* Eggleston Decl. ¶ 19 ("It is in the interests of USCIS to protect the manner in which asylum officers, such as the one that interviewed the Plaintiff, prioritize then analyze information gleaned from asylum applicants during interviews."); Def.'s 2d MSJ at 14–15; Def.'s Reply at 2–3. Furthermore, Mr. Bayala offers no legal authority supporting his view that the Assessment to Refer is not exempt from FOIA under Exemption 5, in the face of multiple opinions—including a binding decision of the D.C. Circuit—that the Assessment to Refer is exempt. Finally, to the extent that Mr. Bayala challenges the general application of the deliberative process privilege, it is well established that "Congress enacted FOIA Exemption 5, however, precisely because it determined that disclosure of material that is

---

[6] The D.C. Circuit's holding in *Abtew* also forecloses Mr. Bayala's brief suggestion that whether the author of the Assessment to Refer believed it would be released is a key factor in whether the Assessment to Refer is exempt. *Cf.* Pl.'s Opp'n at 5; *see also Abtew*, 808 F.3d at 900. The Court further notes that an asylum officer could reasonably believe that each Assessment to Refer, in general, would remain confidential while still being aware that the agency had released some number of Assessments to Refer.

both predecisional and deliberative does harm an agency's decisionmaking process." *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).[7]

Having determined that at least some portions of the Assessment to Refer are exempt from disclosure under the deliberative process privilege, the Court next considers whether the Assessment to Refer contains any non-exempt portions that may reasonably be segregated from the exempt portions and released. Mr. Bayala argues that the Assessment to Refer contains segregable factual information, but DHS argues that any factual material is inextricably intertwined with exempt material. *See* Pl.'s Opp'n at 7–14; Def.'s 2d MSJ at 13–17, ECF No. 50. To resolve this dispute, the Court has reviewed the Assessment to Refer *in camera*.[8] *Cf.* Order, ECF No. 44.

"Even after an agency establishes that a particular FOIA exemption applies, 'it must nonetheless disclose all reasonably segregable, non-exempt portions of the requested record(s).'" *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232, 243 (D.D.C. 2015) (quoting *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 (D.C. Cir. 2003) and 5 U.S.C. § 552(b)); *see also Parker v. U.S. Immigration & Customs Enf't*, 238 F. Supp. 3d 89 (D.D.C. 2017) ("FOIA requires that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-

---

[7] To the extent that Mr. Bayala asserts that DHS has not shown any harm attached to revealing the reasonably segregable factual portions of the Assessment to Refer, the Court agrees, as discussed *infra*.

[8] Because the Court has reviewed the Assessment to Refer *in camera*, it focuses on the actual characteristics of that document rather than DHS's descriptions of the Assessment to Refer, general policies, or any presumption in favor of compliance. *Cf.* Pl.'s Opp'n at 7–8, 12–14 (discussing the Eggleston declaration's description of the Assessment to Refer); Pl.'s Opp'n at 6 (discussing DHS's alleged "blanket policy" of withholding Assessments to Refer in their entirety); Pl.'s Opp'n at 14 (arguing that DHS is not entitled to the general presumption that it released all reasonably segregable material).

exempt portions are inextricably intertwined with exempt portions." (internal citations omitted)). The Court therefore determines, based on its *in camera* review, whether any portions of the Assessment to Refer are reasonably segregable.

The dispute centers on factual material incorporated within the Assessment to Refer. In general, factual material is not exempt under the deliberative process privilege, *see National Sec. Archive v. CIA*, 752 F.3d 460, 466 (D.C. Cir. 2014) (internal citations omitted), but factual material may be withheld if "its disclosure would expose the deliberative process," *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 45 (D.D.C. 2008). Factual material is more likely to reveal the decisionmaking process of the agency when the author of the record exercised judgment in selecting what facts to include. *See Leopold v. CIA*, 89 F. Supp. 3d 12, 21–23 (D.D.C. 2015) (holding that factual material may be exempt when "the selection of the facts thought to be relevant clearly involve[d] 'the formulation or exercise of . . . policy-oriented judgment' or 'the process by which policy is formulated,' in the sense that it require[d] 'exercises of discretion and judgment calls'" (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1538–39 (D.C. Cir. 1993) and citing *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011))). In contrast, factual portions that are mere "mechanical recitations," such as inventories of all facts that "reflect no point of view," are generally not exempt because they do not reveal the agency's decisionmaking process. *Id.* (citing *Mapother*, 3 F.3d at 1540 and *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1437 (D.C. Cir. 1992)); *see also Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) ("To the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5. Conversely, when material could not reasonably be said to reveal

an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.").

However, even selected collections of facts that involved the application of judgment, such as a summary report, may not be exempt if the selection "would not reveal anything about an agency's deliberative processes." *Leopold*, 89 F. Supp. 3d at 23 (citing *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931 (D.C. Cir. 1982) and *Montrose Chem. Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974)). The classic example of this exception is drawn from *Playboy Enterprises*, where the D.C. Circuit concluded that factual material could be segregated and released from a report—even though the report contained only selected facts—because the report "was prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress" rather than to "assist [the agency] to make a complex decision." *Playboy Enters.*, 677 F.2d at 936.

Here, the first eight paragraphs[9] of the Assessment to Refer are a dispassionate narration of facts, similar to material which has been found segregable in other cases. The facts contained in the first eight paragraphs are presented without interpretation, characterization, or analysis by the author, and appear in chronological order. *See Mapother*, 3 F.3d at 1539 (holding that a factual portion of a document was not protected by the deliberative process privilege because it was "in substance an inventory, presented in chronological order"). These paragraphs in no way "intermingle[]" "facts gleaned from the interview" with "the asylum officer's impression of those facts." Def.'s 2d MSJ at 14 (internal quotation marks omitted). Instead, the first eight

---

[9] Although some facts also appear in the portion of the Assessment to Refer past the first eight paragraphs, based upon this Court's *in camera* review these facts are clearly incorporated into the analysis and credibility-finding function of the author of the Assessment to Refer. The Court will therefore permit DHS to withhold the remainder of the Assessment to Refer.

paragraphs read as a neutral and informative report on the factual context for Mr. Bayala's application for asylum, akin to the report in *Playboy Enterprises*.

DHS states generally that "[t]he factual portions of the Assessment to Refer cannot be severed from its context and thus must remain exempt from disclosure," Eggleston Decl. ¶ 18, but provides no analysis to explain why that is the case for this particular Assessment to Refer. This Court, on the other hand, has likewise reviewed the Assessment to Refer and concludes that the first eight paragraphs can be segregated. Similarly, although DHS asserts that the choice of *which* facts to include in the Assessment to Refer demonstrates an exercise of judgment, the document itself offers no indication that facts have been left out. DHS relies on its declaration. *See* Eggleston Decl. ¶ 18 ("The factual distillation in the Assessment to Refer does not purport to be a verbatim transcript of the Plaintiff's asylum interview. Rather, it reflects a selective recording of information the USCIS asylum officer deemed particularly pertinent to Plaintiff's request for asylum."). However, it is unclear on what basis DHS's declarant offers that statement. The declarant does not mention consulting the asylum officer to ask if additional facts were discussed or taking any other steps to establish whether facts were omitted.[10] This Court has now had the opportunity to examine the Assessment to Refer itself, and the first eight paragraphs of the Assessment to Refer carry no signs that they were plucked from a broader array of facts. Furthermore, even if DHS's assertion was correct, the D.C. Circuit has held that selected facts may still be segregable if—as the Court has concluded here based on its *in camera* review—they do not reveal the agency's decisionmaking process. *See Playboy Enters.*, 677 F.2d

---

[10] It appears that a comparison of the notes taken by the asylum officer during the interview and the Assessment to Refer could also shed light on whether the Assessment to Refer contained a curated assortment of facts. However, the interview notes—which were released to Mr. Bayala, apparently in full, by DHS—have not been entered into the record by either party and the Court therefore does not examine them.

at 935 ("Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process."). In this case, the first eight paragraphs are a simple recitation and summary of Mr. Bayala's application, and the Court thus concludes that the first eight paragraphs of the Assessment to Refer can reasonably be segregated. The remainder of the Assessment to Refer, however, reveals the decisionmaking process of the agency and thus is exempt from disclosure under the deliberative process privilege, as previously discussed.

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Here, DHS has brought forward all of its evidence and arguments concerning the segregability of the Assessment to Refer. Because the Court has concluded that the first eight paragraphs of the Assessment to Refer are reasonably segregable, the Court will accordingly enter summary judgment *sua sponte* on that point in favor of Mr. Bayala. *Cf. Shipman v. Nat'l R.R. Passenger Corp.*, 76 F. Supp. 3d 173, 184 (D.D.C. 2014) (resolving a FOIA claim in favor of requestor *sua sponte*). The Court will therefore order DHS to release the first eight paragraphs of the Assessment to Refer to Mr. Bayala, after any redactions that are consistent with the Exemption 6 redactions sustained in this Opinion.

### 2. Other Withholdings

Although Mr. Bayala does not object to DHS's withholdings other than its withholding of the Assessment to Refer, the Court briefly and independently considers if DHS has shown that the undisputed material facts entitle it to summary judgment on its other withholdings. *See*

*Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("'The nonmoving

party's failure to oppose summary judgment does not shift [the moving party's] burden.' The

District Court 'must always determine for itself whether the record and any undisputed material

facts justify granting summary judgment.'" (quoting *Grimes v. District of Columbia*, 794 F.3d

83, 97 (D.C. Cir. 2015) (Griffith, J., concurring))).

DHS relied on FOIA Exemption 6 to withhold the "home address of an interpreter,"

Eggleston Decl. ¶ 21; a "copy of an interpreter's driver's license," Eggleston Decl. ¶ 22; and

portions of a "TECS II I-94 Arrival Departure Display" that "identif[ied] the individual that

prepared the document," Eggleston Decl. ¶ 26. Under Exemption 6, an agency may withhold

"personnel and medical files and similar files" when the disclosure of such information "would

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The

exemption has been interpreted broadly to protect "bits of personal information, such as names

and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets

and internal quotation mark omitted). Where private information is contained in a record, the

court balances "the privacy interest that would be compromised by disclosure against any public

interest in the requested information," *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224,

1228 (D.C. Cir. 2008). The public interest encompasses only "the extent to which disclosure of

the information sought would 'she[d] light on an agency's performance of its statutory duties' or

otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37,

46 (D.C. Cir. 1999) (alteration in original) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations

Auth.*, 510 U.S. 487, 497 (1994)).

For each of these withholdings, DHS argued that there was no public interest in

disclosure because the withhold information would not "enhance the public's understanding of

how the Agency performs its statutory duties." Eggleston Decl. ¶¶ 21, 22, 26. To the contrary, DHS argued that disclosure would impair the privacy interests of the individuals, which are significant, in "avoiding unwanted public attention and notoriety." Eggleston Decl. ¶¶ 21, 22, 26. The Court agrees. Here, the individuals clearly have a privacy interest in avoiding the disclosure of their home addresses or other personal information. Furthermore, Mr. Bayala identifies no public interest in disclosure, nor is such an interest apparent to the Court, and thus the balancing is straightforward. *See Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("We have been shown no public interest in . . . disclosure. . . . We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))). This decision is in harmony with conclusions reached by other courts. *See, e.g.*, *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C.2013) (finding that the agency's withholding of cell phone numbers, home phone numbers, home addresses, medical information, and personal email addresses was proper under Exemption 6); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C.2010) (finding that names and email addresses were properly withheld under Exemption 6 when there was a "clear privacy interest" in avoiding disclosure, and such disclosure served no public purpose). The Court therefore finds that summary judgment is appropriate in favor of DHS as to its use of Exemption 6.

DHS relied on Exemption 7(E) to withhold information about "electronic database systems, communications and instructions for Agency personnel related to possible interactions with applicants, and information gathering techniques," from an "Asylum and NACARA § 2032 Background Identity and Security Checklist," an "IBIS Inquiry," and an "Immigration and

Naturalization Service FD28 Tracking System." Eggleston Decl. ¶¶ 23–25. Information may be withheld under Exemption 7(E) if it satisfies a two-step test—first, the agency must make a "threshold" showing that "that the records were compiled for a law enforcement purpose," *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997); and second, the agency must show that revealing the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7). Although Mr. Bayala does not object at either step, the Court briefly considers the applicability of Exemption 7(E) to the withheld material.

At the first step, the information withheld here was compiled for law enforcement purposes. DHS has represented that the withheld portions of the "Asylum and NACARA § 203 Background Identity and Security Checklist," IBIS inquiry, and "Immigration and Naturalization Service FD28 Tracking System" include "background check information" that "has been created in furtherance of USCIS's duty to prevent fraud, and to further the Agency's investigative functions." Eggleston Decl. ¶¶ 23–25. This suffices to establish that the withheld portions of the record are "related to the enforcement of federal laws" "based on information sufficient to support at least a colorable claim of its rationality." *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982). This decision is in accord with those of other courts permitting DHS and its component agencies to apply Exemption 7 to similar records. *See, e.g.*, *Am. Civil Liberties Union of S. Cal. v. U.S. Citizenship & Immigration Servs.*, 133 F. Supp. 3d 234, 245 (D.D.C. 2015) (permitting USCIS to apply Exemption 7(E) to withhold certain records relating to background check databases); *Rojas-Vega v. U.S. Citizenship & Immigration Serv.*, 132 F. Supp. 3d 11, 19 (D.D.C. 2015), *aff'd* 650 F. App'x 36 (D.C. Cir. 2016) ("[T]his Court concludes that the

responsive records, all of which are maintained in plaintiff's A-File, were compiled for law enforcement purposes."); *Gosen v. U.S. Citizenship & Immigration Servs.*, 75 F. Supp. 3d 279, 289 (D.D.C. 2014) ("[T]he sorts of files at issue here [from the requester's A-file] are involved with the enforcement of a statute or regulation within [USCIS's] authority and . . . were compiled for adjudicative or enforcement purposes[.] Indeed, courts regularly find Exemption 7 applicable to USCIS documents." (citing *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 29 (D.D.C. 2011) and *Skinner v. DOJ*, 806 F. Supp. 2d 105, 113–16 (D.D.C. 2011), other citations and internal quotation marks omitted)).

At the second step, the bar is "relatively low . . . for the agency to justify withholding" information under Exemption 7(E), *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), because agencies may withhold records "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk," *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

DHS asserts that each of the types of information it withheld under Exemption 7(E) would reveal "the nature, scope, source, and amount of information that the Government collects" during the asylum application process as well as "allow for individuals to alter behaviors to avoid detection by immigration officials." Eggleston Decl. ¶ 23*; see also* Eggleston Decl. ¶¶ 24–25 (stating that releasing IBIS Inquiry records or FD28 Tracking System records would "allow applicants to circumvent immigration laws, alter behaviors, or tailor actions thereby limiting, or nullifying, the Agency's ability to effectively investigate and compile the information necessary to adjudicate immigration applications"). The Court finds that DHS has

sufficiently shown a reasonably expected risk that releasing the withheld records would lead to circumvention of the law. Mr. Bayala has not challenged DHS's withholdings pursuant to Exemption 7(E), and other courts in this jurisdiction have reached similar conclusions. *See Mezerhane de Schnapp v. U.S. Citizenship & Immigration Servs.*, 67 F. Supp. 3d 95, 101 (D.D.C. 2014) (approving the agency's withholding of several records under Exemption 7(E), including IBIS queries, because those records would reveal "what sort of law enforcement information (from which databases) is consulted by USCIS during adjudication of a pending asylum application—and, of course, by logical inference, what sort of information is not consulted"). The Court therefore grants DHS summary judgment as to its withholdings under Exemption 7(E).

## V.  CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment (ECF No. 50) is **GRANTED IN PART** and **DENIED IN PART**, and the Court **GRANTS** Mr. Bayala partial summary judgment *sua sponte* to the extent that it orders Defendant to release the first eight paragraphs of the Assessment to Refer. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 1, 2017                              RUDOLPH CONTRERAS
                                                       United States District Judge